UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
TIMOTHY KELLY,

                Plaintiff,

    -against-

TIMES/REVIEW NEWSPAPERS
CORPORATION a/k/a TIMES REVIEW
NEWSPAPERS a/k/a TIMES REVIEW
NEWSGROUP

                Defendant.
-----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
14-CV-2995 (JMA)(SIL)

**LOCKE, Magistrate Judge:**

By way of a Complaint filed on May 13, 2014, Plaintiff Timothy Kelly ("Kelly" or "Plaintiff") commenced this action against Defendant Times/Review Newspapers Corporation a/k/a Times Review Newspapers a/k/a Times Review Newsgroup (the "Times Review" or "Defendant") alleging age discrimination under (i) the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*; (ii) the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and (iii) the Suffolk County Human Rights Law ("SCHRL"), Suffolk Cty., N.Y. Code. pt. II, § 528.7. *See* Docket Entry ("DE") [1]. Presently before the Court, on referral from the Honorable Joan M. Azrack for Report and Recommendation, is the Times Review's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* DE [67]. Also before the Court are Defendant's motion for leave to file certain documents under seal, DE [64], which preceded its motion for summary judgment, and Plaintiff's request for a pre-motion conference

1

regarding his proposed motion to strike various documents submitted by the Times Review in support of its motion for summary judgment, DE [70]. For the reasons set forth herein, the Court respectfully recommends that Defendant's motion for summary judgment be granted and that Plaintiff's Complaint be dismissed with prejudice. The Court further recommends that Defendant's motion to file documents under seal, DE [64], be granted, and that Plaintiff's request for a pre-motion conference, DE [70], be denied as moot.

## I.     FACTUAL BACKGROUND

The following facts are drawn from the parties' respective Local Rule 56.1 statements, and any admissible deposition testimony, declarations, and exhibits. Unless otherwise noted, the facts set forth herein are not in dispute.

### A. Company History

The Times Review operates web-based and print news and lifestyle publications in Suffolk County, New York. *See* Defendant's Local Rule 56.1 Statement of Undisputed Facts ("Def.'s 56.1 Stmt."), DE [67-1], ¶ 9. Plaintiff was employed by Defendant as editor of one of its newspapers, the Suffolk Times, starting in June 1995. *Id.* ¶ 6. He was approximately forty-one years old when he first joined the Times Review. *Id.* ¶ 5. During Kelly's employment with Defendant, the company operated four separate print newspapers, namely, the Suffolk Times, the Riverhead News-Review, the Shelter Island Reporter, and the North Shore Sun. Def.'s 56.1 Stmt. ¶ 9. The Times Review also operated fourteen print magazines and four

websites, three of which contained content from the print newspapers with which they were associated. *Id.*

Plaintiff was initially hired by the Times Review's former president, Troy Gustavson ("Gustavson"). *See* Declaration of Eric J. Bressler, Esq. in Opposition to Motion for Summary Judgment ("Pl.'s Decl." or "Plaintiff's Declaration"), DE [68-5], Exhibit ("Ex.") A at 3. At that time, Gustavson and his wife, Joan Gustavson, were co-owners of the Times Review. *See* Affirmation of Ilan Weiser, Esq. in Support of Motion for Summary Judgment ("Def.'s Aff."), DE [67-5], Ex. E, 21:25-22:23. Andrew Olsen ("Olsen") became co-publisher of the Times Review in 2002, and Denise Civiletti ("Civiletti") became executive editor of the company in 2004. Def.'s 56.1 Stmt. ¶¶ 11, 15. As executive editor, Civiletti oversaw the entire editorial side of the company across all channels and reported directly to the publisher. *Id.* ¶ 14. In this capacity, Civiletti supervised Kelly directly. *Id.* ¶ 15. Following a dispute between Plaintiff and Civiletti, Kelly resigned from Suffolk Times on March 9, 2006 and joined Peconic Bay Medical Center ("Peconic Bay") as its public relations director. *Id.* ¶ 17; Declaration of Timothy Kelly in Opposition to Motion for Summary Judgment ("Kelly Decl."), DE [68-2], ¶ 6. In January 2009, during Plaintiff's tenure with Peconic Bay, Olsen became the sole publisher of the Times Review, in which role he oversaw the entire operation of the company. Def.'s 56.1 Stmt. ¶ 10.

Kelly left Peconic Bay in August 2009, shortly after Civiletti was hired as the company's vice president for fundraising and public relations. Kelly Decl. ¶ 6. Immediately following his departure from Peconic Bay, Kelly, who was 55 years old

3

at that time, was rehired by the Times Review as editor of the Suffolk Times.  Def.'s 56.1 Stmt. ¶¶ 7, 8.  Plaintiff claims to have been rehired by Gustavson "without a service break or loss in seniority," Kelly Decl. ¶ 7, but Defendant contends that Olsen was solely responsible for rehiring Kelly in 2009, *see* Declaration of Andrew Olsen in Support of Defendant's Reply ("Olsen Reply Decl."), DE [69-5], ¶ 2.

In October 2010, Defendant retained the services of human resources consultant Jim Northrup ("Northrup") to assist with personnel matters.  Def.'s 56.1 Stmt. ¶ 32; Olsen Decl. ¶ 11.  Among other responsibilities, Northrup met with the Times Review's employees, coordinated team-building exercises, and served as a confidential outlet for employees that were having problems with their jobs.  Def.'s 56.1 Stmt. ¶ 23; Olsen Decl. ¶ 11.   In 2011, Olsen named Peter Boody ("Boody") executive editor at age sixty, though Boody continued to concurrently serve as editor of the Shelter Island Reporter.  *Id.* ¶ 20; Kelly Decl. ¶ 26.  Grant Parpan ("Parpan") was then promoted to the position of executive editor in July 2012 at age 30.  Def.'s 56.1 Stmt. ¶ 21; *see* Def.'s Aff., Ex. G.  In October 2012, Olsen became co-owner of the Times Review together with his wife, Sarah Olsen.  *Id.* ¶ 12; Def.'s Aff., Ex. E, 20:8-13.  Olsen hired Ambrose Clancy sometime in 2012 at age 64 to serve as editor of the Shelter Island Reporter.  Def.'s 56.1 Stmt. ¶ 22.

## B. Kelly's Job Performance and Termination

According to Defendant, Olsen "had issues with Plaintiff's performance as editor of the Suffolk Times" starting in 2009.  Def.'s 56.1 Stmt. ¶ 45; *see* Olsen Decl. ¶¶ 15-17.  The record reveals a number of incidents from 2009 through 2013 relating

to Plaintiff's job performance.   Initially, in October 2009, managing editor Brian Harmon ("Harmon") emailed Kelly to express his dissatisfaction with Kelly's performance, specifically, Kelly's "blas[é] attitude" and his "indifference . . . to [Harmon's] insistence that [Kelly] fulfill more of [his] duties as editor of The Suffolk Times."   Def.'s Aff., Ex. J.   Harmon concluded the email by "urg[ing] [Plaintiff] to carefully read the job description [Gustavson] established at the time of [Plaintiff's] return to the paper[.]"   *Id.*   In April 2012, Plaintiff, despite his supervisory role, failed to show up for work and did not notify anyone at the office of his absence.   *See id.*, Ex. L; Kelly Decl. ¶ 14(c).   The following day, Kelly became angry during a management team meeting while discussing a professional development plan for another employee.   *See* Def.'s Aff., Ex. D, 151:18-152:2; *id.*, Ex. M.   According to Plaintiff, this "incident of anger . . . was entirely justified and arose out of the entirely unprofessional and improper treatment of . . . a junior reporter[] at a staff meeting." Kelly Decl. ¶ 14(d).   Kelly testified that he "believed the substance of his [argument] was dead on[,]" but that he "could have toned down" his behavior at the meeting.   *Id.*, Ex. D, 151:18-152:2.   Defendant considers Kelly's statements at the meeting "inappropriate emotional outbursts."   *See* Def.'s 56.1 Stmt. ¶ 45(b). Following the meeting, Northrup prepared an internal memorandum entitled "Tim Kelly Meeting Incidents," dated April 6, 2012, which described Kelly as "agitated" both during the meeting and during a follow-up discussion with Olsen.   Def.'s Aff., Ex. D.   On April 12, 2012, Olsen sent Plaintiff a memorandum expressing his "concern[] about [Plaintiff's] performance and behavior last week."   Def.'s Aff., Ex. N. Olsen explained

5

that he wanted Kelly "to be a leader, [a] key member of the management team[,] and [a] steward of The Suffolk Times both in print and on the web" and cited a number of specific examples of instances where Kelly did not meet Olsen's expectations. *Id.* For instance, Olsen noted that Kelly had made several wrong editorial choices and inferred that Kelly was unwilling to "accept [Olsen's] direction and move on." *Id.* Further, Olsen explained to Kelly that "the behavior and judgment that [Plaintiff] demonstrated during the management team meeting was absolutely unacceptable." *Id.* Olsen concluded by describing precisely "what [Plaintiff] need[ed] to do to be successful with [Times Review] moving forward." *Id.* Later in 2012, Olsen informed Kelly by email that the "[Suffolk Times] cover [was] . . . a big yawn" and requested that Kelly be more creative by focusing on "punching up cover art and lead stories." Def.'s Aff., Ex. P. Following Kelly's brief acknowledgment of that email, Olsen further requested that Plaintiff "[l]ook critically at the content and figure out a game plan." *Id.*

According to Defendant, Kelly often missed target deadlines and refused to take responsibility for his conduct. *See* Def.'s 56.1 Stmt. ¶ 45(a). Plaintiff, however, contends that he "never missed any deadlines for completion of [his] work for production of Suffolk Times." Kelly Decl. ¶ 14(b). Yet, in September 2012, Gustavson emailed Kelly about a missed deadline, to which Kelly responded, "I dropped the ball . . . ." *Id.*, Ex. O. Gustavson replied, "I do get a feeling it's happening too often . . . . Please keep an eye on this." *Id.* According to Kelly, this email "reflect[ed] a minor error as to reporting a budget vote on [his] part," but "[n]othing further came of it."

6

Kelly Decl. ¶ 52(f).  Further, in May 2013, a 4:00 p.m. target deadline set by management to submit a Suffolk Times PDF file to Defendant's printer, Mid-Atlantic Graphics, was missed.  *See* Def.'s Aff., Ex. E, 162:22-163:20; *id.*, Ex. R.  Kelly did not take responsibility for the error, instead attributing it to "failures in the production department which was not under [his] supervision."  Kelly Decl. ¶ 52(i).  According to Olsen, this deadline was critical because late submissions could have resulted in increased printing rates, but Plaintiff never "brought resources together to try and solve the problem."  *See* Def.'s Aff., Ex. E, 163:2-5, 8-20.  Following this incident, Olsen and Parpan prepared a memorandum, directed to Kelly only, that set forth "Business Goals" including "us[ing] technology to work smarter[,]" [having] [g]reat management[,]" and "[i]mproving margins through better processes."  Def.'s Aff., Ex. S.

Olsen also testified that Kelly "became more autonomous" to an improper degree when he rejoined Times Review in 2009.  Def.'s Aff., Ex. E, 154:19-155:5.  Around that time, the company began to face increased web-based competition.  Def.'s 56.1 Stmt. ¶ 38.  In response, Defendant commenced efforts to transition its business model by placing a greater emphasis on web production.  *Id.* ¶¶ 38, 39.  According to Olsen, the Times Review "relied on its leadership team, including [its] editors, to facilitate this transition and other changes to its business, including coordinating management to make a conscious effort to shift to digital/electronic news and lifestyle formats . . . ."  Def.'s 56.1 Stmt. ¶ 40; Declaration of Andrew Olsen in Support of Defendant's Motion for Summary Judgment ("Olsen Decl.), DE [67-2], ¶ 13.

Defendant contends that "Plaintiff did not want to take responsibility or become involved with the company's web presence to extent [*sic*] required by management." Def.'s 56.1 Stmt. ¶ 41; *see* Olsen Decl. ¶ 14.   While Plaintiff disputes this characterization, his testimony concedes that he failed to direct his efforts to the company's web initiative:

> Q:   Did you discuss what Mr. Olsen meant by ["web strategy"]?
>
> A:   By "web strategy," he means—yes, he wanted me to be more active in the web.  And I let him know that since I was both a reporter, photographer, editorial writer, columnist that I had interaction with the public regarding letters to the editor, which is one of the most important segments of the paper; none of which or very little of which was done by the other editors.
>
> I was already a full-time employee who was working very hard. And that there was a web editor and there was a reporting staff that worked—reported to the web editor.
>
> * * *
>
> Q:   So you didn't have time to focus on the web?
>
> A:   I did—I was not focused on the web because I was focused on the Suffolk Times; again the flagship publication of the company with the largest readership, the largest number of pages, the largest amount of work to do.

Def.'s Aff., Ex. D, 154:21-155:3.

Consistent with Kelly's admission above, additional evidence demonstrates that Kelly's performance with respect to the company's web initiative was unsatisfactory.  For instance, an email sent by associate web editor Vera Chinese ("Chinese") to Kelly—and forwarded to Olsen—suggests that Kelly, in April 2011, failed to post stories on the web for which he was responsible in a timely manner: "I see no news stories have been posted to the web this week.  What happened?  Now I

am going to have to spend the rest of the day working on the [Suffolk Times] website rather than the stories I need to file for the [Riverhead News-Review]." *Id.*, Ex. K. Moreover, Olsen noted in his April 12, 2012 memorandum that Kelly was "late to embrace [the] web strategy relative to other members of the team." *Id.*, Ex. N.

At his deposition, Olsen testified that, in 2013, the deficiencies in Kelly's performance were "getting even worse" inasmuch as "he was becoming less of a member of the team who wanted to solve problems" and "was not communicating as well with staff." *Id.*, 154:5-22. Moreover, Plaintiff's web production still did not meet Olsen's expectations. Def.'s 56.1 Stmt. ¶ 45(e); Def.'s Aff., Ex. E, 152:2-11. During his deposition, Olsen described Kelly's web production as "almost nonexistent," Def.'s Aff., Ex. E, 152:6-7, though the record does show that Kelly posted at least ten articles to the web in 2013, *see* Pl.'s Decl., Ex. H. Kelly claims to have "fully embraced the concept that both print and web editions of the Suffolk Times were of importance and acted consistently therewith." Plaintiff's Additional Statement of Material Facts Not in Dispute ("Pl.'s 56.1 Stmt."), DE [68-1], ¶ 30. Yet, Plaintiff conceded that he began feeling he was not valued at the company in 2012 because he "was trying to take the paper in a different direction" than Parpan. Def.'s Aff., Ex. D, 118:10-119:1. Kelly further testified that he "felt [Parpan] didn't understand [the Times Review's] version of the newspaper business[,]" *id.*, 128:2-7, and that he thought the Suffolk Times "had taken a wrong turn[,]" *id.*, 129:3-8. Plaintiff nevertheless asserts that a column he wrote in 2010 demonstrates his prior willingness to "embrace change." Kelly Decl. ¶ 30; *see* Pl.'s Decl., Ex. U.

9

Parpan completed two performance evaluations of Plaintiff, the first in January 2012, and the second in June 2013.[1]  *See* Def.'s Aff., Exs. Q, T.  Parpan rated Kelly's attendance "excellent" in both evaluations.  *Id.*  However, in 2012, Plaintiff received ratings of "poor" for initiative and communication/listening skills; and "fair" for job knowledge, work quality, and dependability.  *Id.*, Ex. Q.  Parpan commented that Kelly "needs to rethink [his] approach to [the] web and differentiating content between the two mediums[,]" that his "[w]orkflow and time prioritization need radical improvement[,]" that he "[l]acks web publishing capabilities[,]" that he "[h]as not demonstrated true enthusiasm for the current publishing environment[,]" and that his "[c]ommunication skills [are] poor in our current newsroom and with other editors."  *Id.*  In 2013, Plaintiff's ratings improved, albeit only slightly, to "fair" for job initiative and communication/listening skills, "satisfactory" for work quality and dependability, and "good" for job knowledge.  *Id.*, Ex. T.  In the latter review, Parpan noted that Kelly had "good local knowledge," was a "talented writer," and "puts in a lot of hours."  *Id.*  But Parpan also remarked, among other critical comments, that Plaintiff "[h]asn't fully adjusted to [the] web environment," "rarely takes on projects," and "[c]ould speak more to staff and other editors about web packaging."  *Id.*  As a final comment, Parpan noted that "[Kelly] has been slow to adopt to change, but has begun the process[,]" and that "he must take steps to fully adopt to [the] changing newsroom."  *Id.*

---

[1] Plaintiff contends that he received only the June 2013 evaluation, and not the January 2012 evaluation.  *See* Kelly Decl. ¶ 52(h) ("I never saw this purported review until I commenced this action. It was never discussed with me.").

Plaintiff concedes that, in addition to the formal evaluation he received in June 2013, he had a number of discussions with both Parpan and Olsen about getting more actively involved in the website, improving packaging of print content, and spending more time planning stories and managing reporters.  Def.'s Aff., Ex. D, 115:3-24. Plaintiff, moreover, was warned that his performance would need to improve to ensure his success with the company going forward.  For instance, in April 2012, Olsen recommended that Kelly, among other things, communicate better, focus on professional development plans for his direct reports, improve the editorial quality of the print and web versions of the Suffolk Times, be "more efficient staging content for the web[,]" work better with other team members, and be receptive to constructive criticism.  *See* Def.'s Aff., Ex. N.  Then, in May 2013, Olsen and Parpan outlined for Kelly the company's various business goals and asked Plaintiff to "provide a written self-assessment in the context of these goals."  *See id.*, Ex. S.  Plaintiff's performance did not improve to the level required by Olsen following those admonitions.  Def.'s 56.1 Stmt. ¶ 46.  In an email dated July 2, 2013, Olsen advised Northrup that "Grant has basically been doing Tim's job for him and Tim has been floundering all day long on deadline [*sic*] for July 4th papers" and that "[t]he consensus is the time has come to make this change."  Def.'s Aff., Ex. U.  On July 8, 2018, Olsen emailed Kelly and outlined the various ways in which Plaintiff's performance failed to comport with the company's business goals and strategic plan.  *See* Def.'s Aff., Ex. V.  Olsen ultimately "assessed [Kelly] in relation to the editors of [the Times Review's] other publications[,]" and "felt that compared to the other staff, [Kelly] was not the editor

[they] needed to ensure that the company would move in the direction needed to survive in the ever-changing competitive landscape of the community publishing business." Olsen Decl. ¶ 18.  In light of these considerations, Plaintiff was terminated on July 31, 2013 at age 59.  *See* Def.'s 56.1 Stmt. ¶ 28; Kelly Decl. ¶ 3.  In July of August 2013, Defendant provided Kelly at least four reasons for his termination either in writing or at an in-person meeting: (i) performance; (ii) business reasons; (iii) position elimination; and (iv) moving in another direction.  Pl.'s 56.1 Stmt. ¶ 11; Def's Aff., Ex. C.

### C. <u>Composition of Workforce</u>

From 2009 through 2013, the Times Review's staff was comprised as follows:

| Year | Editorial Department (including editors, proof readers, and calendar managers) (the "Editorial Department") | Editors Only |
|---|---|---|
| 2009 | 18 in ADEA protected class[2] 21 total | 11 in ADEA protected class 14 total |
| 2010 | 16 ADEA in protected class 19 total | 9 in ADEA protected class 12 total |
| 2011 | 16 in ADEA protected class 19 total | 8 in ADEA protected class 11 total |
| 2012 | 13 in ADEA protected class 16 total | 7 in ADEA protected class 10 total |
| 2013 | 11 in ADEA protected class 17 total | 6 in ADEA protected class 16 total[3] |

---

[2] The ADEA's prohibitions against discrimination apply only to individuals who are at least 40 years of age.  *See* 29 U.S.C.A. § 631(a).  The Court refers to such individuals as "protected" and, collectively, as the "protected class."

[3] Defendant disputes the accuracy of this figure, arguing that Plaintiff failed to remove the alleged non-editors from the total pool of editors.  *See* Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment at 7.  The Court finds this position persuasive, as the the 2013 Editorial Department figures would otherwise be irreconcilable with "Editors Only" figures.

*See* Def.'s 56.1 Stmt. ¶¶ 23-27; Kelly Decl. ¶ 27. Five members of the Editorial Department at the Times Review were older than Plaintiff on the date of his termination, July 31, 2013. Def.'s 56.1 Stmt. ¶ 28. Archer Brown, Shelter Island ATI Editor, was 74 years old; Ambrose Clancy, Shelter Island Editor, was 65 years old; Decia Fates, Copy Desk Editor, was 64 years old; Carol Simons, Copy Desk Editor, was 70 years old; and Lee Peters ("Peters"), was 67 years old. *Id.*; Def.'s Aff., Ex. G. However, from 2010 to 2013, the number of ADEA protected employees generally, and the senior editorial staff in particular, declined. Pl.'s 56.1 Stmt. ¶ 18. Additionally, according to Plaintiff, Peters was demoted on an unspecified date, at which time she began reporting to an individual outside of the ADEA protected class. Kelly Decl. ¶ 26. Following Kelly's termination, Michael White ("White"), an individual under 40 years old and with less experience than Kelly, took over as editor of the Suffolk Times while also maintaining his position as editor of the Riverhead News-Review. Pl.'s 56.1 Stmt. ¶ 13; Def.'s Aff., Ex. E, 254:3-18. In 2013, Olsen hired Joseph Pinciaro ("Pinciaro"), who was also under 40 years old, to serve as a managing editor of the Suffolk Times and Riverhead News-Review. Pl.'s 56.1 Stmt. ¶ 14.

### D. Internal Complaint Policies and Alleged Discrimination

The Times Review distributes its company handbook, which includes its anti-discrimination policy, to all new hires, who are obligated to sign it as a condition of employment. Def.'s 56.1 Stmt. ¶ 29; Def.'s Aff., Ex. H. The handbook provides that "[a]ny employee who believes that he or she is being subjected to discrimination . . . as prohibited by these policies . . . should immediately advise their supervisor or the

Publisher."  Def.'s Aff., Ex. H.  Plaintiff acknowledged receiving and reading the handbook as well as the discrimination policies specifically.  Def.'s 56.1 Stmt. ¶ 31. Indeed, according to Kelly's testimony, he understood the Times Review's policy requiring employees to report instances of discrimination to the executive editor. Def.'s Aff., Ex. D 55:22-56:12.  Nevertheless, during his employment with Defendant, Plaintiff never stated to management that he felt he was being discriminated against because of his age.  Def.'s 56.1 Stmt. ¶ 36; Olsen Decl. ¶ 5.

While Kelly claims that "Defendant's representatives made repeated ageist statements which demonstrate animus toward older workers," Kelly Decl. ¶ 15, he never heard any management-level employee make such comments about him specifically.  Def.'s 56.1 Stmt. ¶ 37.  Indeed, Plaintiff's testimony demonstrates that he never heard an ageist comment from management first hand.  *See* Def.'s Aff., Ex. D, 208:5-19; *but see* Kelly Decl. ¶ 51(b) ("Continuing ageist remarks directed at me specifically, and older people in general, were heard . . . by me.").  Kelly also supports this argument with a sworn statement of Beth Young ("Young"), a reporter employed by Defendant from 2010 through 2013, who contends that Parpan "constantly made reference to people in their 60's as 'elderly' and, on multiple occasions, referred to [] Kelly as an 'old man' . . . ."  Declaration of Beth Young in Opposition to Motion for Summary Judgment ("Young Decl."), DE [68-3], ¶ 3.  Parpan denies these charges. *See* Def.'s Aff., Ex. F, 8:2-16; 9:2-12: 182:14-25: 183:2-4.  Young also claims that "[t]he ageist ethic adopted by [D]efendant extended to others as they sought to conform with the corporate philosophy dictated by senior management."  *Id.* ¶ 4.  In support of this

assertion, Young cites to one instance in which she overheard web editor Joe Werkmeister ("Werkmeister") make an ageist remark during a conversation with a coworker.  *Id.*  Young further opines that "[t]here is no doubt [ ] [Times Review] adopted and applied an ageist philosophy to its employees."  *Id.*

### E. <u>Procedural History</u>

Following his termination, Kelly filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights on or about November 8, 2013.  *See* Def.'s 56.1 Stmt. ¶ 1. On January 6, 2014, the Times Review submitted a position statement to the EEOC in opposition to Plaintiff's charge.  Pl.'s Decl., Ex. I.  At Kelly's request, the EEOC issued a Notice of Right to Sue on February 21, 2014.  *See* Def.'s 56.1 Stmt. ¶ 2. Plaintiff then filed this lawsuit on May 13, 2014 seeking back pay, front pay, benefits, liquidated damages, an award for pain and suffering, punitive damages, and attorneys' fees.  *Id.* ¶ 4.  Defendant filed the instant motion for summary judgment, along with Plaintiff's opposition papers and Defendant's reply thereto, on March 17, 2017.  *See* DEs [67]-[69].  On September 18, 2017, Judge Azrack referred the motion for summary judgment and related applications, *see* DEs [64]-[66], [70]-[71], to this Court for Report and Recommendation.

## II.   LEGAL STANDARDS

### A. <u>Summary Judgment</u>

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate.  *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). In deciding a motion for summary judgment, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party.").  In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving

party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see also Artis v. Valls*, No. 9:10-CV-427, 2012 WL 4380921, at *6 n.10 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment.").

The Second Circuit has described the summary judgment standard in employment discrimination cases as follows:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g., Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir.1997); *see also Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006). Consistent with these principles, a plaintiff may not defeat a defendant's motion for summary judgment "by offering purely conclusory allegations of discrimination, absent any concrete particulars[.]" *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

## B. Age Discrimination Claims Under the ADEA and the NYSHRL

Under the ADEA, it is "unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). The statute protects employees who are at least 40 years old. *See id.* § 631(a). Claims arising under the ADEA, as well as those under the NYSHRL, are analyzed using the burden-shifting framework articulated by the United States Supreme Court in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973); *see Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) ("[The *McDonnell Douglas*] framework, which was developed in the context of claims for discrimination under Title VII, applies to claims of age discrimination under the ADEA . . . ."); *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 913 (2d Cir. 1997) ("Age discrimination suits under the NYSHRL get the same analysis as claims under Title VII or the ADEA."); *see also Abdu-Brisson*, 239 F.3d at 466 (applying burden-shifting analysis to both ADEA and NYSHRL claims); *Pietri v. ELC Mgmt., LLC*, No. 14CV3506, 2016 WL 4203495, at *7 (E.D.N.Y. Aug. 9, 2016) (same).

Under this analysis, a plaintiff must "first establish a *prima facie* case, after which the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Brown v. Northrop Grumman Corp.*, No. 12-CV-1488, 2014 WL 4175795, at *5 (E.D.N.Y. Aug. 19, 2014) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)). "Once the defendant provides such a reason, the burden shifts back to the plaintiff to present competent evidence that the reasons offered by the [d]efendant were not the true reasons, but were a pretext for discrimination or retaliation." *Id.* (citing *Fleming v. MaxMara USA, Inc.*, 371 Fed.Appx. 115, 117 (2d Cir. 2010)); *see also Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014) ("Under *McDonnell Douglas,* a plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination; it is then the defendant's burden to proffer a legitimate non-discriminatory reason for its actions; the final and ultimate burden is on the plaintiff

to establish that the defendant's reason is in fact pretext for unlawful discrimination.").

## III.   DISCUSSION

### A.   <u>Declarations and Medical Records Submitted by Defendant</u>

As a preliminary matter, the Court must determine whether to consider certain medical records, as well as the declarations of Northrup, Boody, Peters, and Gustavson, all submitted by Defendant in support of the instant motion for summary judgment.

#### 1. Medical Records[4]

Plaintiff objects to Defendant's use of Plaintiff's medical records on the grounds that they were not referenced in or attached to Defendant's moving papers. *See* DE [70].  The court should not consider such records, Plaintiff argues, because Kelly will have no opportunity to explain, dismiss, distinguish, or otherwise address the content of the records.  *Id.*  Defendant maintains that Plaintiff's contention lacks merit since Defendant included such records with its reply papers "solely for the purpose of impeaching factual representations made by Plaintiff in his [o]pposition [p]apers with his own prior inconsistent statements."  DE [71].

As a general rule, "[a]rguments may not be made for the first time in a reply brief."  *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993).  Similarly, "[w]here new

---

[4] On March 16, 2017, Defendant filed a letter motion seeking leave to electronically file certain documents—namely, notes from various counseling sessions attended by Kelly—under seal as exhibits to its reply papers.  *See* DE [64].  The same day, Plaintiff opposed this application, arguing that "the introduction of new evidentiary material in the reply consisting of [P]laintiff's medical records is improper . . . ."  *See* DE [65].  Defendant then submitted a letter in reply in which it asserted that Kelly's objection was misplaced because "[t]he proffered exhibits . . . are directly responsive to the position [Kelly] took in his [o]pposition papers . . . ."  *See* DE [66].

evidence is presented in a party's reply brief or affidavit in further support of its summary judgment motion, the district court should permit the nonmoving party to respond to the new matters prior to disposition of the motion. *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F. Supp. 1220, 1235 (S.D.N.Y. 1991), *rev'd on other grounds*, 967 F.2d 742 (2d Cir. 1992), *as amended* (Sept. 23, 1992). Notwithstanding these principles, district courts have broad discretion to rely on evidence submitted with reply papers. *See Compania Del Bajo Caroni (Caromin), C.A. v. Bolivarian Republic of Venezuela*, 341 F. App'x 722, 724 (2d Cir. 2009); *see also Bricklayers Ins. & Welfare Fund Bricklayers Pension Fund v. P.P.L. Constr. Servs. Corp.*, No. 12-CV-3940, 2015 WL 1443038, at *8 (E.D.N.Y. Mar. 27, 2015) ("Plaintiffs did not have an obligation to anticipate in their opening papers the specific arguments Defendant raised in its opposition; their response to those arguments was properly raised in their reply.").

Defendant's reply brief and the medical records submitted therewith do not raise any new arguments, but instead respond to various factual assertions made by Kelly in opposition to the motion for summary judgment. Specifically, in opposing the motion Plaintiff asserts that his "termination of employment was not based on any change in the direction of defendant's business[,]" Kelly Decl. ¶ 13, and that he "embraced [such] change," *id.* ¶ 30. The medical records submitted by Defendant, which include notes taken by a mental health professional during sessions with Plaintiff, speak directly to the factual veracity of his claims in this regard. *See, e.g.*, Affirmation of Ilan Weiser, Esq. in Support of Defendant's Reply ("Def.'s Reply Aff."),

DE [69-7], Ex. II.[5]  In addition, such records were exchanged in discovery, and Plaintiff either was or should have been aware of their existence.  Under the circumstances, Kelly cannot claim he was surprised or prejudiced by the Times Review's reliance on the medical records in question.

In his initial letter submitted in response to Defendant's request to file the medical records under seal, *see* DE [65], Plaintiff cites to Rules 6 and 56 of the Federal Rules of Civil Procedure, as well as *Baugh v. City of Milwaukee*, 823 F. Supp. 1452, 1457 (E.D. Wis. 1993), *aff'd*, 41 F.3d 1510 (7th Cir. 1994), for the proposition that Defendant's submission of such records was improper.  However, none of those authorities support his position.  While Rule 6 provides that "[a]ny affidavit supporting a motion must be served with the motion[,]" Fed. R. Civ. P. 6(c)(2), it does not address reply affidavits or declarations.  By contrast, this Court's Local Rules specifically contemplate such submissions. *See* Local Civil Rule 6.1(b)(3) ("[A]ny reply affidavits and memoranda of law shall be served within seven days after service of the answering papers.").  Moreover, Plaintiff fails to identify the specific provision or provisions of Rule 56 that he contends Defendant violated by submitting the medical records at issue.  The Court, having considered all provisions of Rule 56, finds no violation.  Finally, though the court in *Baugh* observed that new evidence may not be raised in reply affidavits, it further acknowledged that, "where the reply affidavit merely responds to matters placed in issue by the opposition brief and does not spring

---

[5] In connection with its motion for summary judgment, Defendant filed a fully redacted version of Exhibit II to its Reply Affirmation.  *See* DE [69-9].  However, the Times Review previously electronically filed the medical records at issue under seal, *see* DE [64-1], and, thus, the Court has reviewed and evaluated their contents.

upon the opposing party new reasons for the entry of summary judgment, reply papers—both briefs and affidavits—may properly address those issues." *Baugh*, 823 F. Supp. at 1457.  Here, as discussed above, Defendant submits the medical records to undermine factual assertions made by Plaintiff in his opposition papers pertaining to an argument already raised by Defendant in its moving papers, *i.e.*, that Plaintiff's termination arose, in part, due to his failure to embrace changes to the Times Review's business model.  Kelly's reliance on Rule 6, Rule 56, and *Baugh* is therefore unfounded.  Accordingly, the Court finds it proper to consider such materials in connection with the instant motion for summary judgment, *see Lopez v. Hollisco Owners' Corp.*, 147 F. Supp. 3d 71, 79 (E.D.N.Y. 2015) (exercising discretion to consider reply declaration), *aff'd*, 669 F. App'x 590 (2d Cir. 2016), and further recommends granting Defendant's request that they be filed under seal in light of their sensitive nature and "highly confidential" designation.

   2. Declarations[6]

   Plaintiff also asks the Court to preclude the Times Review from relying upon the declarations of Northrup, Boody, Peters, Gustavson on the basis that they were never identified in Defendant's Rule 26(a) disclosures as individuals likely to possess

---

[6] Plaintiff initially objected in its opposition brief to Defendant's submission of the declaration of Northrup in support of its summary judgment motion on the basis that Defendant failed to disclose Northrup as a person with knowledge in its Rule 26(a) disclosures.  *See* Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment ("Pl.'s Mem.") at 14.  On March 17, 2017, the Times Review filed its reply brief, which included the declarations of three additional persons not identified in its initial disclosures: Boody, Peters, and Gustavson.  *See* DEs [69-2], [69-4], [69-6].  Consequently, on March 20, 2017, Kelly requested a pre-motion conference on his proposed motion to strike the declarations of Northrup, Boody, Peters, Gustavson, and the medical records that accompanied Defendant's reply brief.  *See* DE [70].  On March 27, 2017, the Times Review filed a response opposing Plaintiff's request for a pre-motion conference.  *See* DE [71].

discoverable information.  Under Rule 26(a), the parties are required to disclose the following information at the outset of a case:

> the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]

Fed. R. Civ. P. 26(a)(1)(A)(i).  Rule 26(a) imposes a continuing obligation on the parties to supplement their disclosures if new information comes to light.  Fed. R. Civ. P. 26(e).  Where a party fails to make a disclosure required under Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c).  "Harmlessness means an absence of prejudice . . . ." *Markey v. Lapolla Indus., Inc.*, No. CV 12-4622, 2015 WL 5027522, at *18 (E.D.N.Y. Aug. 25, 2015) (citation and internal quotation marks omitted), *report and recommendation adopted*, No. 12-CV-4622, 2016 WL 324968 (E.D.N.Y. Jan. 26, 2016). Even if the nondisclosure is not substantially justified or harmless, trial courts have discretion to permit the evidence.  *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297–98 (2d Cir. 2006).  Notably, the Second Circuit has deemed preclusion an "extreme sanction[,]" advising that district court judges "should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses."  *Sprayregen v. A. Gugliotta Dev., Inc.*, 166 F. Supp. 3d 291, 295, (E.D.N.Y. 2016) (quoting *Outley v. City of N.Y.*, 837 F.2d 587, 591 (2d Cir. 1988)).

23

Here, it is undisputed that Defendant failed to identify Northrup, Boody, Peters, Gustavson in its Rule 26(a) disclosures, and Defendant has not articulated a substantial justification for this omission.  However, the Court considers the Times Review's failure harmless.  Defendant identified both Northrup and Gustavson in its responses to interrogatories, served in December 2014, as "individuals [who] provided feedback and input regarding the decision to terminate Kelly's employment . . . in 2013."  Pl.'s Decl., Ex. A at 4.  From that moment forward, their potentially significant role was abundantly clear.  The Times Review also produced a number of documents indicating that Northrup had discoverable information, thereby putting Plaintiff on notice that the Times Review could use such information in support of its defense.  *See, e.g.*, Def.'s Reply Aff., Exs. SS, TT.  Accordingly, Plaintiff had ample opportunity to depose or otherwise seek discovery from each individual but apparently elected not to do so.  Thus, Kelly cannot claim that he was either blindsided by Defendant's submission of the declarations of Northrup and Gustavson or prejudiced by the Court's consideration thereof.  In addition, the declarations of Peters and Boody are properly considered by the Court as impeachment evidence under Fed. R. Civ. P. 26(a)(1)(A).  In opposing the Times Review's motion, Plaintiff has identified both individuals by name to support his theory that there was an "ageist atmosphere" at the company.  *See* Kelly Decl. ¶ 26.  Certainly Defendant is entitled to submit any direct evidence from Peters and Boody that may rebut Plaintiff's assertion.  Accordingly, the Court concludes that the Times Review's submission of the declarations of Northrup, Boody, Peters, Gustavson was proper.  Notwithstanding

the Court's findings with respect to the declarations and medical records at issue, and as demonstrated below, summary judgment in favor of Defendant would be appropriate even without consideration of such materials.

## B. **Defendant's Motion for Summary Judgment**

### 1. Age Discrimination Under the ADEA and NYSHRL

In support of its motion for summary judgment, Defendant argues that Plaintiff's claims for age discrimination must be dismissed because: (i) Plaintiff cannot establish a *prima facie* case under the ADEA or NYSHRL; (ii) the Times Review's reasons for terminating Kelly's employment were legitimate and non-discriminatory; and (iii) Plaintiff is unable to prove that his age was the "but-for" cause of his termination. *See generally* Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Mem."), DE [67-4]. In opposition, Plaintiff contends that: (i) he has demonstrated the existence of a *prima facie* case under the ADEA and NYSHRL by submitting evidence giving rise to an inference of discrimination; and (ii) the reasons proffered by Defendant for the termination of Kelly's employment are pretextual. *See generally* Pl.'s Mem. Applying the standards outlined above, and for the reasons set forth herein, the Court respectfully recommends that Defendant's motion for summary judgment be granted.

### i. *Prima Facie* Case

"To establish a prima facie case, a plaintiff with an age discrimination claim must show '(1) that []he was within the protected age group, (2) that []he was qualified for the position, (3) that []he experienced [an] adverse employment action, and (4)

that the action occurred under circumstances giving rise to an inference of discrimination.'" *Bucalo*, 691 F.3d at 129 (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)). "The burden of establishing a prima facie case . . . is not onerous." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S. Ct. 1089, 1094 (1981); *see Abdu-Brisson*, 239 F.3d at 467 (characterizing the evidence necessary to satisfy this initial burden as "*de minimis*"). The record demonstrates, and the parties do not dispute, that Kelly was within the protected age group and that he experienced an adverse employment action.[7] Though Defendant denies that Kelly was qualified for the position of editor of the Suffolk Times, *see* Defendant's Reply to Plaintiff's 56.1(b) Responsive Statement in Opposition ¶ 15, the Times Review does not argue that Plaintiff has failed to make a *prima facie* showing in this regard. And, in any event, Plaintiff has submitted sufficient evidence of his credentials, experience, and qualifications to make such a showing. *See, e.g.*, Kelly Decl. ¶¶ 3, 8, 9. Thus, the Court need only determine whether Plaintiff has met his burden to establish circumstances giving rise to an inference of discrimination. A plaintiff may satisfy this prong of the *McDonnell Douglas* test by submitting evidence of "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus . . . [or] preferential treatment given to employees outside the protected class[.]" *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir.

---

[7] The Court notes that, under the ADEA, Plaintiff must be at least 40 years old to qualify as a member of the protected class, but the NYSHRL has no such requirement. *See Posner v. Marcus & Millichap Corp. Real Estate Servs.*, 180 F. Supp. 2d 529, 531 n.8 (S.D.N.Y. 2002) ("Unlike the comparable federal statute, which applies only to persons over 40, the NYSHRL protects all persons over the age of 18 against age discrimination." (citing N.Y. Exec. L. § 296, subd. 3–a(a)). This distinction, however, is immaterial to the Court's analysis here.

1996).  An inference of age discrimination "also arises when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class." *Littlejohn v. City of New York*, 795 F.3d 297, 312-13 (2d Cir. 2015) (citations omitted); *see Montana v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 105 (2d Cir. 1989) (concluding that the plaintiff established an inference of discrimination where her duties were assumed by a co-worker and a newly-hired employee, both of whom were outside of the protected class); *Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 318 (E.D.N.Y. 2014) ("[T]he mere fact that a plaintiff was replaced by someone outside the protected class will suffice to establish the required inference of discrimination at the *prima facie* stage." (citations and internal quotation marks omitted)).

Here, Defendant argues that no inference of discrimination can be drawn because Plaintiff has failed to offer evidence showing that Parpan, White, or any other editors outside of the protected class were treated more favorably than him.  *See* Def.'s Mem. at 8.  Plaintiff does not challenge the Times Review's argument directly, but rather asserts that such an inference can be drawn because Kelly was replaced by an out-of-class employee and his position was not eliminated.  *See* Pl.'s Mem. at 6.  In particular, Plaintiff contends that the changes in Defendant's senior editor structure in 2013, whereby the editor and managing editor positions for the Suffolk Times and the Riverhead News-Review were consolidated, were merely changes in form but not in substance.  *See id.* ("[P]rior to Kelly's termination of employment the top editorial spots for the two publications were occupied by an age-protected employee—Kelly—

27

and a person out of class—Michael White.   After the termination of Kelly's employment, the top editor spots were occupied exclusively by out of class employees.").   Notwithstanding Defendant's position that the company consolidated the Suffolk Times and the Riverhead News-Review editor positions, *see* Olsen Decl. ¶ 19, Plaintiff has submitted sufficient evidence supporting his theory that, as a practical matter, his position was not eliminated and he was replaced with an individual outside of the protected class, namely, White, who was in his 30s when he took over Kelly's position. *See* Kelly Decl. ¶ 11. According to Kelly, both prior to and following the termination of his employment, two editors covered both publications. *Id.* Indeed, it is undisputed that the Times Review created a new position of managing editor for both the Suffolk Times and the Riverhead News Review, which was filled by Pinciaro, an employee also in his 30s. *Id*. Defendant's assertion that one person occupied the dual-role of editor of both publications following Plaintiff's termination, therefore, would not preclude a reasonably jury from finding that his position remained and was filled by a non-protected individual, White, particularly given the lack of evidence countering Kelly's claim that the company's position changes were nominal in nature. Accordingly, the Court concludes that Plaintiff has met his initial burden to show an inference of discrimination.[8]

---

[8] Because the Court concludes that Plaintiff has established a *prima facie* case, the Court will address the parties' remaining arguments in connection with final stage of the *McDonnell Douglas* burden shifting test. *See Ehrbar*, 131 F. Supp. at 24 (noting that facts tending to undermine an inference of discrimination "are more appropriately raised at the pretext stage").

ii. Reasons for Termination

Having determined that Plaintiff has established a *prima facie* case, Defendant may rebut Kelly's claim "by articulating legitimate and non-discriminatory reasons for the adverse employment action." *Abdu-Brisson*, 239 F.3d at 468. "[T]he employer's burden . . . is not a particularly steep hurdle." *Hyek v. Field Support Servs., Inc.*, 702 F. Supp. 2d 84, 93 (E.D.N.Y. 2010), *as amended* (Mar. 25, 2010), *aff'd*, 461 F. App'x 59 (2d Cir. 2012). "A defendant meets his burden if he presents reasons that, 'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" *Id.* at 469 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 2748 (1993)). "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 2105 (2000) (quoting *St. Mary's Honor Ctr.,* 509 U.S. at 509, 113 S.Ct. at 2742).

Here, Defendant rebuts the presumption of discrimination by offering a legitimate reason for terminating Kelly's employment. Defendant asserts that the primary reason for Plaintiff's termination was that he "refused to lead the company away from its focus on its print products and devote more attention to developing its web products, as the current publishing environment demanded." Def.'s Mem. at 15. The Times Review has offered substantial evidence supporting this contention through deposition testimony, declarations, documents, and Plaintiff's own admission that he was too busy to focus on the web-based initiative. According to Olsen, Plaintiff "did not adjust his work and management to help position the company for the future[;] [r]ather, he seemed focused on the company's print-product

29

of the Suffolk Times, and how [he] thought it should be run." Olsen Decl. ¶ 14; *see also id.* ¶ 15. Indeed, Kelly's own deposition testimony demonstrates his lack of willingness to lead by example by taking an active leadership role in the company's web-related efforts. *See* Def.'s Aff., Ex. D, 154:23-155:3 ("I was not focused on the web because I was focused on the Suffolk Times; again the flagship publication of the company with the largest readership, the largest number of pages, the largest amount of work to do."). There is likewise ample evidence supporting the claim that Kelly failed to embrace the company's new direction over the course of several years. For instance, Plaintiff conceded at his deposition that he "was trying to take the paper in a different direction" than Parpan., Ex. Def.'s Aff., Ex. D, 118:10-119:1, and that he thought the Suffolk Times "had taken a wrong turn[,]" *id.*, 129:3-8. Plaintiff's admissions in this regard are confirmed by documentary evidence, including emails, internal memoranda, and performance reviews, which demonstrate his consistent dissent from the goals of management. *See, e.g.*, Def.'s Aff., Ex. M (Northrup memorandum from April 6, 2012 meeting); Ex. N (April 12, 2012 memorandum from Olsen to Kelly regarding "next steps"); Ex. Q (January 7, 2012 performance review prepared by Parpan); Ex. R (email string regarding missed deadline in May 2013); Ex. S (May 23, 2013 memorandum from Olsen and Parpan regarding "Business Goals" and "Next steps"); Ex. T (June 4, 2013 performance review prepared by Parpan). Olsen ultimately "assessed [Kelly] in relation to the editors of [the Times Review's] other publications[,]" and "felt that compared to the other staff, [Kelly] was not the editor [they] needed to ensure that the company would move in the direction

needed to survive in the ever-changing competitive landscape of the community publishing business."   Olsen Decl. ¶ 18.   Accordingly, by offering a legitimate, nondiscriminatory business rationale justifying its decision to terminate Kelly, Defendant has satisfied its burden in the second step of the *McDonnell Douglas* analysis.

### iii. "But-For" Causation

Once a defendant presents a legitimate, non-discriminatory reason for the adverse employment action, as the Times Review has done here, "the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination."   *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006).   To satisfy this burden, "'a plaintiff . . . must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action' and not just a contributing or motivating factor." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180, 129 S. Ct. 2343, 2352 (2009)).   "The condition that a plaintiff's age must be the 'but for' cause of the adverse employment action is not equivalent to a requirement that age was the employers *only* consideration, but rather that the adverse employment action[ ] *would not have occurred without it*." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) (omission and emphasis in original) (citation and internal quotation marks omitted).   "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."   *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093 (1981).   "[T]o rebut an

employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are 'conclusory and unsupported by evidence of any weight.'" *Brierly v. Deer Park Union Free Sch. Dist.*, 359 F. Supp. 2d 275, 292 (E.D.N.Y. 2005) (quoting *Smith v. Am. Exp. Co.*, 853 F.2d 151, 154-55 (2d Cir.1988)).

Plaintiff contends that Defendant's stated reasons for his termination were pretextual because such reasons were "provided at various times and under various circumstances." *See* Pl.'s Mem. at 8. In addition, Plaintiff argues that he has submitted sufficient evidence of "the existence of repeated ageist remarks directed at him" and a "reduction in number of age-protected employees" working for the Times Review to support a finding of age discrimination. *See id.* at 12. As explained below, however, the evidence submitted by Kelly in support of these arguments—even after drawing all reasonable inferences against Defendant—does not raise any genuine issue of material fact regarding whether his age was the "but for" cause of his termination.

### a. Pretext

Kelly claims that each justification offered by Defendant for his termination was pretextual, arguing that: (i) he was replaced by an individual outside of the protected class and his position was not eliminated; (ii) Defendant has offered "no dollar and cents proof of any business justification" for his termination; and (iii) there were no *bona fide* performance issues warranting his termination. *See* Pl.'s Mem. at 8. As an initial matter, the Court recognizes that a genuine issue of material fact will

typically exist when an employer offers inconsistent explanations for an adverse employment decision. *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137 (2d Cir. 2000). In *Carlton*, the employer cited economic reasons for the plaintiff's termination in a letter to the EEOC, but throughout discovery stated only that the decision was based on inadequate job performance. *Id.* at 137. The instant case is plainly distinguishable from *Carlton*. To be sure, the Times Review has offered various reasons for terminating Kelly's employment—"going in another direction," "meeting business needs," "position was eliminated," and "performance issues,"—but such reasons are neither inconsistent nor self-contradictory in the context of this case. Def.'s Aff., Ex. C. The evidence, including Kelly's own admissions, establishes that when the Times Review made a business decision to move toward web-based publication, Kelly refused to participate in that effort, and his failure in this regard led to his termination. And unlike the employer in *Carlton*, the Times Review communicated its reasons to Kelly at or around the same time in either late July or early August 2013. *See id.* Thus, these purported inconsistencies are nothing more than an attempt to save Plaintiff's untenable case.

Nor are Plaintiff's additional arguments pertaining to pretext persuasive. Though Plaintiff has adduced evidence sufficient to establish a *prima facie* case based upon his replacement by White, an editor outside the protected class, that inference is insufficient to establish but-for causation where the undisputed evidence demonstrates that Defendant did consolidate the editor positions for the Suffolk

Times and the Riverhead News-Review.[9]  *See* Olsen Decl. ¶ 19.  The total number of editors at the Times Review did in fact decline from 2009 to 2013, *see* Kelly Decl. ¶ 27, and, thus, Kelly's claim that there was no "reduction in workforce," *see id.* ¶ 11, is conclusory and belied by his own evidence.  Similarly, Kelly offers no evidence to substantiate his claim that Defendant lacked legitimate business reasons for his termination.  Plaintiff merely declares in a conclusory manner that "[t]here were no specific business reasons asserted by [D]efendant at the time of [his] termination of employment and no records produced which would reflect such a business purpose." Kelly Decl. ¶ 12.  Yet, at discussed previously, the Times Review has offered multiple forms of uncontradicted proof by way of deposition testimony, declarations, Plaintiff's own admissions, and documentary evidence that a number of business reasons—but primarily Plaintiff's failure to adjust to the company's evolving business model focusing on web-based publication—brought about his eventual termination.  Kelly also claims that "the condition of the Suffolk Times declined" after his departure in an attempt to refute Defendant's "business reasons" justification for his termination, but identifies no particular source supporting this claim, instead citing generally to Exhibits A through F and Exhibit M to Plaintiff's Declaration.[10]

---

[9] In his declaration in opposition to Defendant's motion, Plaintiff cites to "Exhibit EE to the Bressler Declaration" for the assertion that "Joseph Pinciaro had direct responsibility for the Riverhead News Review and Michael White had responsibility for the Suffolk Times."  However, no such exhibit has been submitted to the Court.

[10] The Court has reviewed Exhibits A through F and Exhibit M of Plaintiff's Declaration, but is unable to glean any meaningful evidence therefrom with respect to the Times Review's business condition.  The Court presumes that Kelly is attempting to rely on various interrogatory responses concerning Defendant's sales, circulation, and financial information, to demonstrate the company's declining performance.  However, without further specificity, the Court is unable to make a determination in this regard.  In any event, even if the Times Review's "condition" had declined after

Plaintiff's performance-related arguments likewise fail.  Kelly's contention
that his performance review by Parpan in June 2013 was "satisfactory" is belied by
the evaluation itself, which provides, among other things, that Kelly "hasn't fully
adjusted to the web environment" and is "[n]ot demonstrating leadership"; and that
Kelly's "[p]roductivity [is] a concern[.]"  *See* Def.'s Aff, Ex. T.  Further, although
Plaintiff may have only received one formal performance evaluation, there is evidence
in the record that Plaintiff was, on numerous occasions, both advised by management
of his shortcomings and informed of the manner in which those issues could be
remedied.  *See, e.g.*, Def.'s Aff., Ex. N (describing management's concerns with Kelly's
editorial choices, communication skills, unacceptable behavior, and failure to timely
embrace the company's web strategy, and proposing action steps for Plaintiff to "be
successful with [the Times Review] moving forward"), Ex. P (noting management's
dissatisfaction with Suffolk Times' cover and interior art and imploring Kelly to
"[l]ook critically at the content and figure out a gameplan"), Ex. R (discussing missed
deadline and advising Plaintiff that "hitting the deadline for [the Suffolk Times is]
part of your leadership role as editor"), Ex. S (setting forth the Times Review's
business goals and enumerating specific "next steps" for Kelly following the missed
deadline).  The fact that Kelly "was never given an action plan whereby any perceived
performance deficiency could be remedied by meeting certain metrics or benchmarks
within a given timeframe" does not somehow negate the ample and largely

---

Kelly's termination, this alone would not suffice to show that its proffered business reasons for the
termination were pretextual.  Rather, it would establish that Defendant's effort to improve its business
was unsuccessful.

uncontradicted evidence in the record showing that his job performance consistently failed to meet management's expectations. *See id.* Finally, there can be no question that Plaintiff simply disagreed with the web-focused business model promoted by management and chose to focus his efforts elsewhere. Indeed, as discussed above, Plaintiff conceded that he wanted to "take the paper in different direction" than Parpan, that he thought the Suffolk Times "had taken a wrong turn," and that he chose to focus his efforts on print to the exclusion of the web. Def.'s Aff., Ex. D, 118:10-119:1; 129:3-8; 154:21-155:3. Plaintiff's unsupported reference to his "column in 2010 wherein he embraced change," Kelly Decl. ¶ 30, falls far short of undermining the evidence that the Times Review's decision was based on Kelly's failure to adjust his work and management to help position the company for the future. *See* Olsen Decl. ¶ 14. Accordingly, the Court finds no issue of material fact concerning whether the reasons offered by Defendant for Plaintiff's termination were pretextual, and that Kelly's age was the but-for reason for his termination, sufficient to defeat summary judgment. *See Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988) ("[I]t is not the function of a fact-finder to second-guess business decisions or to question a corporation's means to achieve a legitimate goal."); *Miller v. Nat'l Ass'n of Sec. Dealers, Inc.*, 703 F. Supp. 2d 230, 247 (E.D.N.Y. 2010) ("[T]his Court does not sit as a super-personnel department that reexamines an entity's business decisions." (citation and internal quotation marks omitted)).

b. Reduction in Age-Protected Employees

Plaintiff also alleges that younger employees at the Times Review received preferential treatment and that other similarly-situated age-protected employees were discriminated against because of their age.  In the Second Circuit, "where a plaintiff seeks to make out a case of discrimination 'by pointing to the disparate treatment of a purportedly similarly situated employee, the plaintiff must show that []he shared sufficient employment characteristics with that comparator so that they could be considered similarly situated." *Ugactz v. United Parcel Serv., Inc.*, No. 10-CV-1247, 2013 WL 1232355, at *16 (E.D.N.Y. Mar. 26, 2013) (quoting *Drummond v. IPC Int'l, Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005)).  "This 'comparator' does not need to be 'identical' to the plaintiff; only 'similarly situated in all material respects.'" *Ehrbar*, 131 F. Supp. at 21 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014)).

Defendant here concedes that Kelly was similarly situated to other members the Editorial Department.  *See* Def.'s Mem. at 7; Def.'s Ex. G.  Having reviewed the record, however, the Court finds insufficient evidence of preferential treatment of younger employees within this group to support a finding that age was the but-for cause of Plaintiff's termination.  It is undisputed that 11 out of 17 members of the Editorial Department were age-protected in 2013, and that five of those individuals were older than Plaintiff on the date of his termination.  *See* Olsen Decl. ¶ 7(f).  Archer Brown, Shelter Island ATI Editor, was 74 years old; Ambrose Clancy, Shelter Island Editor, was 65 years old; Decia Fates, Copy Desk Editor, was 64 years old; Carol

37

Simons, Copy Desk Editor, was 70 years old; and Peters, was 67 years old.  *Id.*; Def.'s Aff., Ex. G.   This undisputed evidence undermines any claim of preferential treatment for younger employees as a group.   Plaintiff argues that the Court should not consider "non-editorial staff," such as proof readers and calendar managers, as similarly-situated in evaluating whether there was an "ageist atmosphere" at the Times Review, Kelly Decl. ¶¶ 26, 27, but provides absolutely no factual or legal support for this contention.   In fact, evidence submitted by Defendant demonstrates that all positions within the Editorial Department were considered part of the editorial staff.   *See* Def.'s Reply Aff., Exs. PP, QQ.   In any event, even using the figures proposed by Kelly, six age-protected editors remained employed by Defendant on the date of Plaintiff's termination.

Moreover, Plaintiff adduces no evidence that Barbara Pfanz, Ray Fedynak, and Lois Sotille—Times Review Employees from different departments, *see* Kelly Decl. ¶ 26—were similarly-situated to Plaintiff in all material respects and, thus, his reliance on circumstances relating to their employment is misplaced.   The Court agrees with Defendant that, because those individuals were not editors, such circumstances have no bearing on the Court's determination of whether age was the but-for cause of Kelly's termination.   *See MacKinnon v. N.Y.C. Human Res. Admin.*, 441 F. App'x 16, 17-18 (2d Cir. 2011) (summary order) (holding that the plaintiff's failure to provide facts regarding the ages of the other employees and how they are similarly situated warranted granting the defendant summary judgment).   Finally, Plaintiff's own unsupported allegations pertaining to similarly-situated employees Janis

Garramone, Boody, and Peters are likewise without merit, as a party "may not rely simply on conclusory statements" in opposing summary judgment. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995); *see Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir.1996) ("[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."). Accordingly, Kelly has not presented any probative evidence of a "youth movement," *see* Pl.'s Mem. at 11, from which a reasonable fact-finder could infer that his age was the but-for cause of his termination.

### c. Alleged Ageist Remarks

Plaintiff further argues that "repeated ageist remarks by Grant Parpan, a person in his 30s and one of the decision makers," which "were witnessed through March[] 2013" constitute evidence of discrimination with respect to his termination. Pl.'s Mem. at 7, 9. It is well-settled law in the Second Circuit that "verbal comments may constitute evidence of discriminatory intent if the plaintiff can establish a nexus between the alleged discriminatory remarks and the defendant's decision to terminate the plaintiff's employment." *Del Franco v. New York City Off-Track Betting Corp.*, 429 F. Supp. 2d 529, 536 (E.D.N.Y. 2006), *aff'd*, 245 F. App'x 42 (2d Cir. 2007). In evaluating whether such comments are probative of discrimination, or instead merely "stray remarks" with no legal significance, courts in the Second Circuit consider "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the

remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010).  "[T]he stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination." *Abdu-Brisson*, 239 F.3d at 468.  Nevertheless, "when 'other indicia of discrimination are properly presented, the remarks can no longer be deemed 'stray,' and the jury has a right to conclude that they bear a more ominous significance.'" *Id.* (quoting *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998)).

Parpan has denied Kelly's allegations in this regard out of hand.  *See* Def.'s Mem. at 9; Def.'s Aff., Ex. F, 8:2-16; 9:2-12: 182:14-25:183:2-4.  Plaintiff, however, claims that he heard "continuing ageist remarks directed at [him] specifically" and "an ageist comment about older people in general."  *See* Kelly Decl. ¶ 51(b).  He also submits the declaration of Young to support his contention that Olsen "constantly made reference to people in their 60's as 'elderly' and, on multiple occasions, referred to [] Kelly as an 'old man' right up until the time I left [in March 2013]" and that "[t]he ageist ethic adopted by [D]efendant extended to others as they sought to conform with the corporate philosophy dictated by senior management."  Young Decl. ¶ 4.  Plainly, questions of fact exists with respect to whether Parpan made such comments and, if so, when they were made.  Nevertheless, even assuming Plaintiff's and Young's allegations to be true, the Court finds an insufficient nexus between the comments in question and Plaintiff's termination and considers them stray remarks.  *See Pierce v. Gareb Shamus Enterprises, Inc.*, No. 09-CV-1564, 2013 WL 1344963, at

40

*5 (E.D.N.Y. Mar. 29, 2013) (finding no nexus between management's references to the plaintiff as the "old guy" and the plaintiff's subsequent termination).  Initially, the record lacks evidence tending to show that Parpan's alleged comments had any relation to Olsen's ultimate decision to terminate Kelly.  *See Del Franco*, 429 F. Supp. 2d at 536 ("[S]tatements made by nondecisionmakers, or statements made by decisionmakers unrelated to the decisional process itself do not constitute sufficient evidence to support a claim of age discrimination." (citation and internal quotation marks omitted)).  In addition, the remarks at issue are alleged to have been made more than three months prior to Plaintiff's termination, and thus lack sufficient temporal proximity to establish the requisite nexus thereto.[11]  *See Del Franco*, 429 F.Supp.2d at 529 (finding an insufficient nexus where "slightly more than three months" elapsed between alleged discriminatory statements and termination). Finally, assuming these remarks were made, the Court concludes that they are stray remarks insufficient to save Kelly's claim, because all of the other evidence, including his own admissions and the ages of his coworkers, establish that his termination was not based on his age.  Accordingly, no reasonable jury could find, based on the alleged comments at issue here, that Plaintiff's age was the but-for cause of his termination. *See Lee v. N.Y. State Dept. of Health*, No. 99 Civ. 4859, 2001 WL 34031217, *19 (S.D.N.Y. Apr. 23, 2001) (finding that remarks by an employer cannot establish

---

[11] Young's allegations regarding Werkmeister's comments are too imprecise to support a finding of discriminatory intent.  *Cf. Mars v. Serv. Now For Adult Persons*, 305 F.Supp.2d 207, 214 (E.D.N.Y.2004) (finding plaintiff's evidence that defendant made vague comments about "some people complaining about old men driving vehicles" insufficient to show an inference of discrimination).  In any case, these alleged statement, if made, would be even further removed from the decision to terminate Plaintiff than those purportedly made by Parpan.

pretext when they are remote in time and are unrelated to the challenged adverse employment decision).

### d. Plaintiff's Remaining Arguments

Finally, Plaintiff contends that the Court should give no weight to: (i) the fact that he was already within the protected class when he was hired; and (ii) the fact that Olsen was within the protected class when he terminated Plaintiff. "[C]ourts in this Circuit have recognized that any inference of age discrimination is undercut" where, as here, a plaintiff is over the age of forty at the time he is hired. *Vinokur v. Sovereign Bank*, 701 F. Supp. 2d 276, 288 (E.D.N.Y. 2010) (citation omitted); *Chin v. ABN-AMRO N. Am., Inc.*, 463 F. Supp. 2d 294, 303 (E.D.N.Y. 2006) (noting that the plaintiff's status as a member of the protected class at the time he was hired undermines any inference of age discrimination). Moreover, "a well-recognized inference against discrimination exists where the person who participated in the allegedly adverse decision is also a member of the same protected class." *Drummond*, 400 F. Supp. 2d at 532; *Chin v. ABN-AMRO N. Am., Inc.*, 463 F. Supp. 2d 294, 304 (E.D.N.Y. 2006) ("A plaintiff's being hired and fired by the same manager is a highly relevant factor suggesting that invidious discrimination was unlikely."). Such an inference, however, "is not dispositive, since members of a protected class can discriminate against other members of that class, but it creates an additional hurdle that plaintiff must overcome." *Meyer v. McDonald*, 241 F. Supp. 3d 379, 391 (E.D.N.Y. 2017), *aff'd sub nom. Meyer v. Shulkin*, No. 17-993, 2018 WL 480478 (2d Cir. Jan. 19, 2018).

Olsen hired Plaintiff when Plaintiff was within the protected class, 55 years old, and terminated Plaintiff's employment when Plaintiff was 59 years old. Kelly attempts to negate this inference against discrimination by claiming that his employment with the Times Review was "essentially continuous by reasons of the waiver of service break and waive of the loss of any seniority," Pl.'s Mem. at 10, and that he was actually hired by Gustavson, and not Olsen, in 2009. But Kelly cites no evidence beyond his own conclusory statements supporting the tenuous theory that his effective date of hire should not be the date he returned from Peconic Bay after his three-year tenure there. Nor does Plaintiff identify a legal basis for this proposition. Similarly, there is sufficient evidence demonstrating that Olsen, and not Gustavson, hired Kelly in 2009. *See* Olsen Reply Decl. ¶2; *see also* Declaration of Troy Gustavson in Support of Defendant's Reply ¶ 7.[12] In addition, it is undisputed that Olsen was 42 years old and, thus, within the protected class, at the time of Plaintiff's termination. Plaintiff offers no legal support for his assertion that Olsen's age-protected status should not be considered because Olsen was "barely in the age-protected category" when he terminated Plaintiff. Pl.'s Mem. at 11. Accordingly, each of these considerations cuts against a finding of discriminatory intent here.

---

[12] The Court recognizes that there may be questions of fact with respect to who rehired Plaintiff in 2009 if the Court were to disregard the declaration of Gustavson. Nevertheless, even assuming Gustavson, and not Olsen, hired Kelly in 2009, Plaintiff has still failed to submit evidence sufficient to create a material issue of fact as to whether age was the but-for cause of his termination. Moreover, given the overwhelming amount of evidence demonstrating that age was not the but-for cause of Plaintiff's termination, this particular fact cannot be considered material for purposes of the instant motion.

\*\*\*

In sum, taken together and viewed in a light most favorable to Plaintiff, the evidence presented fails to raise a genuine issue of material fact concerning whether age was the "but-for" reason for Kelly's termination. Accordingly, the Court respectfully recommends that Defendant's motion for summary judgment be granted as to Plaintiff's age discrimination claims under the ADEA and the NYSHRL and that these claims be dismissed with prejudice.

2. The Suffolk County Code

In addition to his causes of action under the ADEA and the NYSHRL, Plaintiff asserts a claim for unlawful discrimination in violation of the SCHRL. Defendant argues that this claim should be dismissed because the SCHRL did not provide for a private right of action for employment discrimination at the time Plaintiff commenced this action.[13] *See* Def.'s Mem. at 21. In response, Plaintiff maintains that there is an implied private right of action within the SCHRL. *See* Pl.'s Mem. at 12. The Court has reviewed the applicable version of the SCHRL and is unable to identify any provision from which a private right of action can be inferred. *See Gerardi v. Huntington Union Free Sch. Dist.*, 124 F. Supp. 3d 206, 230 (E.D.N.Y. 2015) (refusing to imply private right of action into the SCHRL); *Broomer v. Huntington Union Free*

---

[13] Defendant correctly points out that, although the SCHRL was amended in January 2015 to give individuals the right to file a complaint regarding unlawful discrimination with the Human Rights Commission, there is no indication that this amendment applies retroactively. *See* Def.'s Mem. at 21 n.12; *see also St. Clair Nation v. City of New York*, 14 N.Y.3d 452, 456–57, 902 N.Y.S.2d 22, 25 (2010) ("It is well settled under New York law that retroactive operation of legislation is not favored by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it." (internal quotations marks omitted)).

*Sch. Dist.*, No. 12 CV 574, 2013 WL 4094924, at *7 (E.D.N.Y. Aug. 13, 2013), *aff'd*, 566 F. App'x 91 (2d Cir. 2014) (dismissing discrimination claim under the SCHRL in light of the plaintiff's "fail[ure] to indicate the section of the [SCHRL] which provides for such a claim"). Accordingly, the Court recommends that summary judgment as to Plaintiff's SCHRL claim also be granted and that this cause of action be dismissed with prejudice.

## IV.   CONCLUSION

For the reasons set forth herein, the Court respectfully recommends that Defendant's motion for summary judgment be granted and that Plaintiff's Complaint be dismissed with prejudice.[14]   The Court further recommends that Defendant's motion to file documents under seal, DE [64], be granted, and that Plaintiff's request for a pre-motion conference, DE [70], be denied as moot.

## V.   OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below.   Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report.   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

---

[14] Because the Court recommends that Plaintiff's complaint be dismissed, the Court need address Defendant's arguments pertaining to damages.

Dated: Central Islip, New York        s/ Steven I. Locke
       February 15, 2018            STEVEN I. LOCKE
                                 United States Magistrate Judge

46